IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**ARTHUR LEE HAIRSTON, SR.,**

        Plaintiff,

v.                      CIVIL ACTION NO. 3:19-CV-198
                                (GROH)

**DVA, MARTINSBURG; NAGE (SEIU); SUSAN ANDERSON;
and SARAH E. SUSZCZYK;**

        Defendants.

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

Pending before the Court is Plaintiff Arthur Lee Hairston, Sr.'s, ("Plaintiff") pro se Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis.[1] Because Plaintiff seeks to proceed *in forma pauperis*, the undersigned must conduct a preliminary review to determine whether Plaintiff's pro se Complaint [ECF No. 1] sets forth any viable claims. See 28 U.S.C. § 1915(e)(2)(B). Because the undersigned concludes that Plaintiff has failed to state a claim upon which relief can be granted, the undersigned recommends that Plaintiff's complaint be dismissed, without prejudice, and Plaintiff's motion to proceed *in forma pauperis* be denied as moot.

**II.    THE COMPLAINT**

On November 25, 2019, Plaintiff filed the instant pro se complaint alleging that Defendants "DVA, Martinsburg;" National Association of Government Employees

---

[1] This motion was referred to the undersigned by order dated December 2, 2019. Order of Referral, ECF No. 4.

("NAGE"); Susan Anderson; and Sarah E. Suszczyk (collectively, "Defendants") breached their duty of fair representation to Plaintiff. See ECF No. 1, at 1-2. At least before July 11, 2017, Plaintiff was employed with the Veterans Affairs Medical Center ("VAMC") and assigned to work the CLCA nursing home.[2] Id. at 2. Plaintiff alleges that on July 11, 2017, Robert Sterling and Mark Childers, supervisors at the VAMC, issued a "false written counseling statement[3]" against Plaintiff in retaliation for Equal Employment Opportunity Commission ("EEOC") activity.[4] Id. Plaintiff alleges that as a result of this false written counseling statement he was reassigned jobs to 4A.[5] Id. Plaintiff alleges that this reassignment was a violation of Article 21, Section 9(A) of the master agreement between the Department of Veterans Affairs and NAGE, which section states that reassignments shall not be used as punishment, harassment, or reprisal. Id. After being reassigned to 4A, Plaintiff alleges that he was "set up and terminated." Id. Finally, Plaintiff alleges that Defendants were aware of the false counseling statement, did not stop the illegal reassignment, and "failed to protect and keep . . . Plaintiff . . . in his bided job." Id.

Plaintiff appears to make two distinct claims in his complaint. First, Plaintiff claims that Defendants breached their duty of fair representation by failing to prevent his job reassignment to 4A, which ultimately resulted in Plaintiff's termination. Id. at 1–2. Plaintiff

---

[2] Plaintiff provides no information regarding the actual title and nature of this job assignment.
[3] Plaintiff attached a copy of this "written counseling statement" from an incident that occurred on July 7, 2017. [ECF No. 1-2]. The statement addressed the reasons for issuance: "loafing, willful idleness, or waste of time," "[d]eliberate refusal to carry out any proper order from a supervisor having responsibility for the work of the employee; willful resistance to same," and "[d]isrepectful, insulting, abusive, insolent, or obscene language or conduct to or about supervisors, other employees, patients, or visitors." Further, this statement "inform[ed] [Plaintiff] that this type of behavior is unacceptable and will not be tolerated. Id. Plaintiff asserts with a handwritten notation on the statement [ECF No. 1-2] "timing one day after whistle blow." However, Plaintiff provides an email [ECF No. 1-4], which he asserts is the alleged "whistle blow" that he sent on December 15, 2017, five months after the incident which prompted the written counseling statement, not one day prior. [ECF No. 1-2].
[4] Plaintiff provides no information regarding what EEOC activity he was engaged in.
[5] Plaintiff provides no information regarding the actual title and nature of this job assignment.

2

also appears to claim that his employer, the VAMC, breached a collective bargaining agreement, which governed Plaintiff's employment with the VAMC, by reassigning him based on a false written counseling statement that was issued in retaliation for EEOC activity. Id. at 2. However, even though Plaintiff appears to name his employer – DVA, Martinsburg – as a defendant in the instant action, Plaintiff does not plead any facts regarding any redress he has sought from his employer or Defendants regarding his alleged illegal job reassignment.

Plaintiff seeks monetary and compensatory damages, injunctive relief, and other damages in the amount of $300,000, the return of all union dues paid, and 300 hours of legal fees. Id. at 1.

### IIII. LEGAL STANDARD

When filing a lawsuit in federal court, the plaintiff is required to pay certain filing fees. The court has the authority to allow a case to proceed without the prepayment of fees "by a person who affirms by affidavit that he or she is unable to pay costs . . . ." L.R. Gen. P. 3.01. The plaintiff files this affidavit along with her request or motion for leave to proceed *in forma pauperis*. Id. The Supreme Court of the United States has explained that the purpose of the "federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989).

When a plaintiff seeks to proceed *in forma pauperis*, the court conducts a preliminary review of the lawsuit before allowing the case to proceed. See 28 U.S.C. § 1915(e). This includes cases filed by non-prisoners. See Michau v. Charleston Cnty., S.C., 434 F.3d 725, 727 (4th Cir. 2006) (holding that the district court did not abuse its

discretion when it dismissed the non-prisoner complaints under 28 U.S.C. § 1915(e)(2)(B)). The court must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief can be granted, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility

standard and survive dismissal for failure to state a claim. Id.; see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A case is often dismissed *sua sponte* (i.e., on the court's own decision) before the defendant is notified of the case "so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke, 490 U.S. at 324. When reviewing pro se complaints, the Court must construe them liberally. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. DISCUSSION

### A. Nature of Plaintiff's Claim

The duty of fair representation arises from the grant under § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a).[6] Breininger v. Sheet Metal Workers Intern. Ass'n Local Union No. 6, 493 U.S. 67, 87–88 (1989). It is based in "the union's exclusive power to represent all employees in a particular bargaining unit" and "serves as a 'bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law.'" Id. at 88 (quoting Vaca v. Sipes, 386 U.S. 171, 182 (1967)). A union employee may bring a civil action against his union for breach of the duty of fair representation either as a standalone claim or as part of a safe-harbor, hybrid § 301 claim. Groves v. Commc'n of Am., 815 F.3d 177, 182–83 (4th Cir. 2016).

The hybrid § 301 claim allows an employee to avoid contractual exhaustion requirements under the collective bargaining agreement where an employee shows both "1) that the union breached its duty of fair representation and 2) that his employer violated

---

[6] The undersigned notes that Plaintiff's claim is a federal question and therefore, the Court has subject-matter jurisdiction. See Bailey v. Boilermakers Local 667 of Int'l Bhd. of Boilermakers, 480 F. Supp. 274, 280 (N. D. W. Va. 1979) (determining that the court had subject-matter jurisdiction to hear a duty of fair representation claim).

the collective bargaining agreement." Id. at 178–79 (quoting Thompson v. Aluminum Co. of Am., 276 F.3d 651, 656 (4th Cir. 2002)). However, the hybrid § 301 claim also requires the showing of a causal nexus between the breach of the union's duty and the employee's failure to exhaust contractual remedies. Id. at 182. This is because "the hybrid § 301 action [i]s a solution to [a] specific injustice: an employee [being] unable to exhaust contractual remedies because of his union's breach of the duty of fair representation." Id. at 181.

While Plaintiff appears to allege that his employer violated the collective bargaining agreement, see ECF No. 1, at 2, the undersigned concludes that Plaintiff's complaint is better construed as a standalone claim against Defendants and not as a hybrid § 301 claim. First, even though Plaintiff appears to name his employer as a defendant, Plaintiff makes no mention of contractual exhaustion requirements on the issue of his job reassignment or his attempts (or lack thereof) to pursue such remedies. Second, Plaintiff alleges no relationship between Defendants' alleged breach of duty and Plaintiff's failure (if he did so fail) to exhaust his contractual remedies. Lacking such allegations, the undersigned concludes that it is more appropriate to construe Plaintiff's complaint as a standalone claim against Defendants, or in the alternative, to conclude that Plaintiff has failed to plead facts sufficient to sustain a hybrid § 301 claim.

**B. Standalone Claim for Breach of Duty of Fair Representation**

"It is well established that unions, as exclusive bargaining agents in the negotiation, administration and enforcement of collective bargaining agreements, have an implicit duty 'to serve the interests of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary

conduct.'" Thompson, 276 F.3d at 657 (quoting Vaca, 386 U.S. at 177). "Whether a union acted arbitrarily, discriminatorily or in bad faith requires a separate analysis, because each of these requirements represents a distinct and separate obligation." Id. To be "arbitrary," a union's conduct towards its member must be so far outside a wide range of reasonableness that it is wholly irrational, making the arbitrariness analysis an objective one. Id. at 657–58. On the other hand, "the analysis of discrimination and bad faith . . . focus[es] on the subjective motivation of the union officials." Id. at 658.

Looking carefully at the complaint and construing it liberally, Plaintiff only makes two allegations against Defendants: (1) they knew of the false counseling statement and (2) they did nothing to stop his illegal job reassignment from CLCA nursing home to 4A. ECF No. 1 at 2. Plaintiff's characterizations of the counseling statement as "false" and the job reassignment as "illegal" are conclusory allegations. See Twombly, 550 U.S. at 555. Plaintiff does not allege any facts from which a reasonable inference could be made that the counseling statement was false or that the job reassignment was illegal. Ashcroft, 556 U.S. at 679. Plaintiff also claims that the job reassignment violated Section 9(A) of the collective bargaining agreement, but he does not allege any facts from which a reasonable inference could be made that the counseling statement was in retaliation of EEOC activity[7] or that the counseling statement was the basis for the job reassignment. To the extent Plaintiff alleges the counseling statement was in retaliation for his "whistle blower disclosure," as noted above, Exhibit D attached to Plaintiff's complaint, post dates the written counseling statement by more than five months.

---

[7] The complaint is entirely lacking in describing any EEOC activity undertaken by Plaintiff.

7

Turning to the arbitrariness standard more specifically, Plaintiff's allegation that Defendants did not stop his job reassignment although they were aware of the counseling statement, does not produce a basis from which a reasonable inference can be made that Defendants acted wholly irrationally. "A union may screen grievances and press only those that it concludes will justify the expense and time involved in terms of benefitting the membership at large." Griffin v. Int'l Union, United Auto., Aero. and Agric. Implement Workers of Am., 469 F.2d 181, 183 (4th Cir.1972). Here, the undersigned does not even know if grievances are involved in Plaintiff's claim. Plaintiff does not indicate what inaction on the part of Defendants he is contesting, and a complaint must provide "fair notice of what the . . . claim is and the grounds upon which it rests" to survive dismissal. Twombly, 550 U.S. at 555.

As a final note, Plaintiff alleges no facts regarding the subjective motivations of NAGE officials. So, Plaintiff has failed to sufficiently plead a claim against Defendants for breach of the duty of fair representation on the basis of discrimination or bad faith.

Because Plaintiff has failed to plead facts sufficient to show that Defendants have acted arbitrarily, discriminatorily, or in bad faith, he has failed to plead facts sufficient to state his claim for breach of the duty of fair representation. Because Plaintiff has failed to state a claim upon which relief can be granted, his complaint should be dismissed without prejudice.

## V. RECOMMENDATION

For the foregoing reasons, I find that Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, I **RECOMMEND** that Plaintiff's Complaint [ECF No. 1]

be **DISMISSED WITHOUT PREJUDICE** and Plaintiff's Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis be **DENIED AS MOOT**.

Plaintiff Arthur Lee Hairston, Sr., shall have fourteen (14) days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to mail a copy of this Report and Recommendation to the pro se Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 6th day of December, 2019.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE